Cite as 2025 Ark. 63

# SUPREME COURT OF ARKANSAS

No. CV-24-650

| | |
|---|---|
| ARKANSAS POST-PRISON TRANSFER BOARD; LONA MCCASTLAIN, IN HER OFFICIAL CAPACITY AS THE CHAIRWOMAN OF THE ARKANSAS POST-PRISON TRANSFER BOARD; THE ARKANSAS DIVISION OF CORRECTION; DEXTER PAYNE, IN HIS OFFICIAL CAPACITY AS THE DIRECTOR OF THE ARKANSAS DIVISION OF CORRECTION; AND TIM GRIFFIN, IN HIS OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF ARKANSAS | **Opinion Delivered:** May 8, 2025 |
| APPELLANTS | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FOURTH DIVISION [NO. 60CV-23-8448] |
| V. | HONORABLE HERBERT WRIGHT, JUDGE |
| JODECI K. NORVEL | |
| APPELLEE | <u>AFFIRMED</u>. |

**COURTNEY RAE HUDSON, Associate Justice**

The Arkansas Post-Prison Transfer Board; Lona McCastlain, in her official capacity as the Chairwoman of the Post-Prison Transfer Board; the Arkansas Division of Correction; Dexter Payne, in his official capacity as Director of the Division of Correction; and Tim Griffin, in his official capacity as the Attorney General of Arkansas, appeal from an order of the Pulaski County Circuit Court granting appellee Jodeci K. Norvel's petition for declaratory judgment, injunctive relief, and prayer for mandamus relief. The circuit court

found that Act 683 of 2023, codified at Arkansas Code Annotated section 16-93-609(b)(2)(B) (Supp. 2023), applied to Norvel and that he was entitled to the relief sought in his petition—namely, a finding by the court that he was eligible for parole along with appropriate injunctive relief. For reversal, appellants argue that, on its face, Norvel's sentencing order contains an "express designation" that he was sentenced under Act 683, making him ineligible for parole. They further argue that the circuit court's interpretation of Act 683 leads to absurd results contrary to legislative intent. We affirm.

On June 7, 2018, Norvel entered a negotiated plea of guilty in case number 60CR-17-603. He received an aggregate eighteen-year sentence for battery in the first degree and possession of firearms by certain persons,[1] and the State nolle prossed a firearm enhancement under Arkansas Code Annotated section 16-90-120 and a sentencing enhancement for being a habitually violent felony offender under Arkansas Code Annotated section 5-4-501(d). Under "Additional Info," the sentencing order states as follows: "DEFENDANT HAS TWO PRIOR RESIDENTIAL BURGLARIES AND SHOULD SERVE FLAT TIME." The record reflects that, at the time of sentencing, Norvel actually had four residential-burglary convictions committed in 2013 and earlier, and the plea hearing included discussion of the parties' agreement that Norvel would serve "flat time" due to having two prior violent felony convictions.

On November 6, 2023, shortly after Act 683 went into effect, Norvel filed a petition for declaratory judgment, injunctive relief, and for a writ of mandamus in the Pulaski

---

[1]The eighteen-year sentences on each count were to be served concurrently with each other and with his sentences in two other cases.

2

County Circuit Court. Norvel's petition alleged that appellants were requiring him to serve his entire eighteen-year sentence and wrongly denying him eligibility for parole under Arkansas Code Annotated section 16-93-609(b)(2)(B), which provides:

> Unless the sentencing order expressly designates that the defendant was sentenced under this section, "a violent felony offense or any felony sex offense" does not include residential burglary, § 5-39-201, committed before April 1, 2015, unless the defendant was sentenced on or after May 24, 2022.

Norvel contended that he was eligible for parole under the statute because he was sentenced before May 24, 2022,[2] and his sentencing order did not "expressly designate" that he was sentenced under that section. He sought a declaratory judgment that Act 683 rendered him eligible for parole and requested that appellants be ordered to modify his parole-eligibility date. Appellants filed a timely answer. Norvel moved for judgment on the pleadings, arguing that there were no contested issues of material fact and that he was entitled to judgment on the pleadings because his sentencing order did not expressly designate that he was sentenced under section 16-93-609. Appellants responded and filed a cross-motion for summary judgment. They argued that, while the General Assembly required an express designation under Act 683, the Act did not require the designation to follow a specific format or include any "magic words." Further, they argued that the designation on Norvel's sentencing order could only be a reference to section 16-93-609. Appellants also urged the circuit court to reject Norvel's reading of the statute under the absurdity doctrine: "Norvel's argument

---

[2]May 24, 2022, is when the Arkansas Attorney General issued Opinion No. 2022-010 explaining that a residential burglary committed during the relevant dates was a "felony involving violence" under Arkansas Code Annotated section 16-93-609(b) so that an offender convicted of a subsequent violent felony offense would be required to serve 100 percent of his or her sentence. For a full recitation of the events leading up to the enactment of Act 683, see *Rodgers v. Arkansas Parole Board*, 2024 Ark. 176, 700 S.W.3d 876.

3

would require [the sentencing court] in 2018, when [he] was convicted, to look into the future and foresee" the passage of Act 683 and "anticipate that only a text citation of the title, chapter, and section of the statute would serve to impose parole ineligibility." Appellants further noted that "everyone knew and expected that Norvel would be parole ineligible precisely because of his prior residential burglary convictions," which was "part of the bargain he struck with the State in exchange for his guilty plea." Finally, appellants asserted that Norvel's reading of the statute conflicted with the legislative-intent section of Act 683 because Norvel was not one of the "affected persons" it was intended to reach.

The circuit court held a hearing on the parties' motions. On June 25, 2024, the court entered an order granting Norvel's motion for judgment on the pleadings and denying appellants' cross-motion for summary judgment. The circuit court found that Norvel's sentencing order "does not explicitly reference or mention § 16-93-609. It simply has the above-quoted sentencing regarding flat time," and consequently, Norvel's sentencing order did not sufficiently reference section 16-93-609. The circuit court likewise rejected appellants' absurdity argument. The order stated: "Despite it—perhaps—resulting in an outcome opposite to what the legislature is argued to have intended, the words in the statute are easy enough to understand." Because Norvel's sentencing order "does not have the express designation required by § 16-93-609," the circuit court found that his "prior convictions for residential burglary are not 'violent felonies.'" Accordingly, the court found that Norvel was entitled to the relief he sought. This timely appeal followed.

The primary issue on appeal is whether the notation on Norvel's sentencing order constitutes an express designation that he was sentenced under section 16-93-609. When

4

reviewing a grant of judgment on the pleadings, we view the facts alleged in the complaint as true and in the light most favorable to the party seeking relief. *Ark. Parole Bd. v. Johnson*, 2022 Ark. 209, at 4–5, 654 S.W.3d 820, 823. We will affirm the circuit court's decision in the absence of an abuse of discretion. *Id*. However, we review issues of statutory interpretation de novo, as it is for this court to determine the meaning of a statute. *Id*.

In *Rodgers v. Arkansas Parole Board*, 2024 Ark. 176, at 14–15, 700 S.W.3d 876, 885–86, this court interpreted section 16-93-609(b)(2)(B) as follows:

> The primary disagreement between Rodgers and appellees is whether the notation in Rodgers's sentencing order constitutes an express designation. As appellees correctly note, in accordance with the plain meaning of the word, something is "express" when it is "[c]learly and unmistakably communicated; stated with directness and clarity." *See Black's Law Dictionary* 724 (12th ed. 2024). Further, to "designate" commonly means to "represent or refer to (something) using a particular symbol, sign, name, etc." *See id*. at 561. As discussed above, Rodgers's sentencing order contained the following notation: *"DEF WILL SERVE 100% ON AGG ROBBERY[.]" This notation does not constitute a direct citation to section 16-93-609, nor does it clearly or unmistakably represent that Rodgers had been sentenced under that section.* Contrary to appellees' argument that the statute does not prescribe the exact form the express designation must take or set forth any magic words that must be used, the meaning of "express" is unambiguous. Further, the language of the statute unequivocally limits our review to Rodgers's sentencing order alone as opposed to taking Rodgers's plea agreement, plea hearing, or any other evidence into consideration. As such, we are unpersuaded by appellees' position that, within the context of Rodgers's negotiated plea agreement and his prior criminal history, the notation in his sentencing order was a clear and unmistakable reference to the applicability of section 16-93-609.

(Emphasis added). This court also rejected the appellees' arguments that this court's conclusion would lead to absurd results and that Rodgers was not an "affected person" to whom the Act applies. *Rodgers*, 2024 Ark. 176, at 15–16, 700 S.W.3d at 886.

5

In two companion cases to *Rodgers* handed down that same date, this court summarily rejected arguments that the notations on those sentencing orders constituted express designations under the Act. In *Wright v. Arkansas Post-Prison Transfer Board*, 2024 Ark. 173, 700 S.W.3d 724, the sentencing order stated: "DEFENDANT IS TO SERVE FLAT TIME." In *Arkansas Post-Prison Transfer Board v. McGowan*, 2024 Ark. 181, the sentencing order provided: "Defendant has been advised that he may be ineligible for release on parole due to a prior felony conviction." In both *Wright* and *McGowan*, this court referred to the analysis in *Rodgers* to conclude that there had been no express designation of the statute in those cases.

In *Rodgers*, this court's application of the statutory requirement that the sentencing order "expressly designate" sentencing under that section turned on the sentencing order (1) directly citing Arkansas Code Annotated section 16-93-609 or (2) "clearly or unmistakably represent[ing] that [the defendant] had been sentenced under that section." *Rodgers*, 2024 Ark. 176, at 14–15, 700 S.W.3d at 886. We explained that a plain-language reading of the statute unequivocally limits our review to the sentencing order alone in making the determination whether an express designation had been made. *See id.*

Here, appellants argue that the circuit court erred in finding that Act 683 required Norvel's sentencing order to cite the code section to establish that he was sentenced under section 16-93-609. While appellants acknowledge that Act 683 requires an "express designation," they assert that the Act does not specify how that designation must be worded. Notably, we rejected these same arguments in *Rodgers* and its companion cases, which were all handed down on December 12, 2024. After those cases were decided, appellants filed

their reply brief in which they attempted to distinguish the language in those sentencing orders from the language in the sentencing order in this case. As set out above, there was no reference to prior residential burglaries in the previous cases, but this is a distinction without a difference. Appellants contend that this reference to prior residential burglaries makes it clear that Norvel would be parole ineligible only because of his prior residential burglaries and the application of Arkansas Code Annotated section 16-93-609(b)(2)(B). We disagree. As we explained in *Rodgers*, our review is limited to the sentencing order alone. The sentencing order in the present case does not cite section 16-93-609, nor does it clearly or unmistakably represent that Norvel was sentenced under that section. Under stare decisis principles, appellate courts are bound to follow prior case law. *Hervey v. State*, 2011 Ark. 113, at 2. Accordingly, based on our precedent, we reject appellants' argument that the notation on Norvel's sentencing order constituted an express designation under Arkansas Code Annotated section 16-93-609.

Appellants also contend that the circuit court's interpretation of Act 683 leads to absurd results contrary to legislative intent, citing Act 683, § 1, an uncodified provision explaining legislative intent. Section 1(b) provides: "It is the intent of the General Assembly that this act apply solely to the recalculation of parole eligibility for the affected persons and not create a right to a resentencing proceeding, a new trial, other remedy, or cause of action that did not exist before the effective date of this act." We have already rejected this argument as well. *See Rodgers*, 2024 Ark. 176, at 15–16, 700 S.W.3d at 886. In doing so, we noted that the language of section 16-93-609 is so plain that judicial construction is

7

limited to what the statute itself provides. *See id*. Again, the reasoning of *Rodgers* is controlling, and appellants' argument is without merit.

Pursuant to our analysis in *Rodgers*, we hold that the notation on Norvel's sentencing order does not constitute an express designation that he was sentenced under Arkansas Code Annotated section 16-93-609. Accordingly, we affirm the circuit court's order.[3]

Affirmed.

WOMACK and WEBB, JJ., and Special Justice MARY CAROLE YOUNG dissent.

BRONNI, J., not participating.

---

[3]In response to the dissent, we must point out that it is patently incorrect to state that Arkansas Code Annotated section 16-93-609 did not exist when Norvel was sentenced. It did. Later, the General Assembly amended that section by adding subdivision (b)(2)(B) to require an express designation on a sentencing order that the defendant was sentenced under section 16-93-609. To the extent that the dissent believes the result is absurd, we note that we are merely effectuating the intent of the General Assembly as expressed in the plain language of the statute. The General Assembly was keenly aware that this new subdivision would necessarily affect sentencing orders already in place. Nonetheless, our legislature chose the precise words "expressly designate[]" rather than any equivocal language that would allow us to take into consideration surrounding circumstances such as the terms of a plea agreement.

**SHAWN A. WOMACK, Justice, dissenting.** The proper disposition of this case is to reverse and dismiss pursuant to Article 5, section 20 of the Arkansas Constitution.[1] Absent an express constitutional provision to the contrary, the State can never properly be a defendant in any of its courts.[2] Here, Norvel improperly made the State a defendant when he petitioned for mandamus, declaratory, and injunctive relief in a new civil action below, 60CV-23-8448.[3] Instead, he should have petitioned in his underlying criminal case, 60CR–13-1929. Accordingly, this court, like the circuit court below, lacks jurisdiction. For these reasons, the circuit court's order must be reversed and the case dismissed.

---

[1] *See Thurston v. League of Women Voters of Ark.*, 2022 Ark. 32, at 17, 639 S.W.3d 319, 327 (Womack, J., dissenting).

[2] *Id.*

[3] *See Perry v. Payne*, 2022 Ark. 112, at 5, 2022 WL 1674752 (Womack, J., dissenting) (stating Article 5, section 20 required the dismissal of the appeal from denial of writ of mandamus and declaratory judgment).

**BARBARA W. WEBB, Justice, dissenting.** In an opinion more reminiscent of Lewis Carrol than Louis Brandeis, the majority has affirmed a circuit court finding that because Norvel's sentencing order did not cite a code section *that did not exist* when he was sentenced,[1] Norvel is not subject to the parole-eligibility statute that *was* in effect when he pleaded guilty. I cannot join the majority.

On January 4, 2017, Norvel, a career criminal, shot Linda Thomas nine times as she sat in her car. Ms. Thomas somehow survived. The State charged Norvel with only one count of first-degree battery and one count of possession of a firearm by certain persons. Nonetheless, these charges carried a fifteen-year firearm enhancement for the first-degree battery and a three-strike habitually violent felony offender enhancement and a four-or-more habitual felony offender enhancement. He faced a potential life sentence for these charges.

In 2018, Norvel negotiated a very lenient plea deal in which he received only an eighteen-year sentence. Importantly, the parties agreed that Norvel would be ineligible for parole pursuant to Ark. Code Ann. § 16-93-609(b)(1), which provides that a defendant "who commits a violent felony offense or any felony sex offense subsequent to August 13, 2001, and who has previously" been convicted of "any violent felony offense or felony sex offense[,] shall not be eligible for release on parole[.]"

---

[1]Act 683 of 2023 added subdivision (b)(2)(B) to section 16-93-609.

> (B) Unless the sentencing order expressly designates that the defendant was sentenced under this section, "a violent felony offense" does not include residential burglary, § 5-39-201, committed before April 1, 2015, unless the defendant was sentenced on or after May 24, 2022.

10

I am mindful that the Department of Correction, at some point, for some inmates, misinterpreted when to consider a prisoner's conviction for residential burglary to be a felony involving violence.[2] The Department of Correction's flawed analysis was known to

---

[2]The court recited the following in *Rodgers v. Arkansas Parole Bd.*, 2024 Ark. 176, 700 S.W.3d 876:

> Effective April 1, 2015, residential burglary was added to the enumerated list of felonies involving violence found in Arkansas Code Annotated section 5-4-501(d)(2). *See* Ark. Code Ann. § 5-4-501(d)(2)(A)(xi) (Supp. 2015); *see also* Act 895 of 2015 ("Act 895"). Following the passage of Act 895, the ADC interpreted this change to apply only to residential burglaries that were committed after the date that the law went into effect. See Op. Ark. Att'y Gen. No. 026 (2023). Stated differently; in implementing Act 895, the ADC did not consider residential burglaries committed prior to April 1, 2015, to be "felonies involving violence" for purposes of calculating parole eligibility under section 16-93-609.

Over seven years later, on May 24, 2022, the Arkansas Attorney General was asked to determine whether a residential burglary committed before April 1, 2015, constituted a prior "violent felony offense" so that an offender convicted of a subsequent violent felony offense would be required to serve 100 percent of his or her sentence. See Op. Ark. Att'y Gen. No. 010 (2022). In determining that the ADC's interpretation of Act 895 was inconsistent with the law, the Attorney General reasoned that

> [g]ranted, residential burglary was not designated as a "felony involving violence" until 2015. But critically . . . nothing in subsection 16-93-609(b) suggests that to render an offender ineligible for parole after the commission of another violent felony offense, the prior residential burglary must have occurred after 2015[.]

*See* Op. Ark. Att'y Gen. No. 010.

Following the issuance of that opinion, the ADC abandoned the interpretation of Act 895 that it had adhered to since 2015. See Op. Ark. Att'y Gen. No. 026 (2023). As a result, the ADC began treating residential burglaries committed prior to April 1, 2015, as "felonies involving violence" for purposes of calculating parole eligibility in accordance with sections 5-4-501(d)(2) and 16-93-609(b) and recalculated the parole-eligibility dates for offenders that had been impacted by this new interpretation. *Id.* Although Rodgers had negotiated a plea agreement, the ADC recalculated his parole eligibility in light of the 2022 attorney general opinion. Initially, the ADC had determined that Rodgers would be

criminal defendants and their attorneys, and apparently these individuals relied to their detriment on this interpretation when they negotiated plea agreements. Norvel was not similarly affected as shown by his plea colloquy. Novel's trial counsel confirmed that he would be ineligible for parole under section 16-93-609(b)(1):

| THE COURT: | Show plea of guilty accepted. Is it negotiated? |
|---|---|
| PROSECUTOR: | It is, Your Honor. |
| THE COURT: | What's the negotiation? |
| DEFENSE COUNSEL: | It will be eighteen years in the Arkansas Department of Corrections. And, Your Honor, it is the understanding of both parties that this Defendant does have two prior violent felony convictions, and that this will be served as flat time. |
| THE COURT: | Pursuant to the negotiated plea in case number 17-603, it will be five years, or excuse me, eighteen years in the ADC and with the two prior violent felonies, it will be flat time on the sentencing, give you five hundred and five (505) days jail credit. |

In what can only be interpreted as an abundance of caution, the following designation was made in the sentencing order: "DEFENDANT HAS TWO PRIOR RESIDENTIAL BURGLARIES AND SHOULD SERVE FLAT TIME." Accordingly, the ADC was led to the inevitable conclusion that Norvel was ineligible for parole.

It is critical to note that section 16-93-609 is the only parole-eligibility statute that, given Norvel's criminal record, would make him ineligible for parole. Norvel was convicted

---

required to serve 70 percent of his sentence before becoming parole eligible on his aggravated-robbery conviction pursuant to section 16-93-618(a)(1)(C). However, following the opinion, the ADC recalculated Rodgers's parole-eligibility date to be the day that he will complete 100 percent of his twelve-year sentence due to his 2008 residential-burglary conviction.

of four residential burglaries between 2009 and 2013. As the *Rodgers* court noted, in 2015, the General Assembly passed Act 895 of 2015, which added residential burglary to the list of violent felonies in Ark. Code Ann. § 5-4-501(d)(2)(A)(xi) (Supp. 2015). A prisoner's parole eligibility depends on the statute that is in effect when he or she committed the offense. *Carroll v. Payne*, 2023 Ark. 125, 674 S.W.3d 733; *Jenkins v. Payne*, 2023 Ark. 184, 678 S.W.3d 770; *Sims v. Payne*, 2023 Ark. 187, 678 S.W.3d 766; *Rogers v. Ark. Dep't of Corr.*, 2022 Ark. 19, 638 S.W.3d 265; *Pitts v. Hobbs*, 2013 Ark. 457; *Aguilar v. Lester*, 2011 Ark. 329. Norvel's sentencing court was obviously aware of this well-settled point of law.

Norvel's petition should have been summarily rejected. However, through a torturously flawed misinterpretation of a remedial provision tucked inside Act 659 of 2023, the court has whipped away Norvel's parole ineligibility.

Regarding statutory interpretation, I stand by my dissents in *Rogers*; *Wright v. Arkansas Post-Prison Transfer Board*, 2024 Ark. 173, at 5, 700 S.W.3d 724, 725; and *Arkansas Post-Prison Transfer Board v. McGowan*, 2024 Ark. 181, at 5. I, however, must briefly address the majority's summary rejection of the State's argument that the circuit court's—and now the majority's—conclusion that failure to cite a nonexistent code section in Norvel's sentencing order failed to satisfy Act 683's new requirement that the sentencing order contain an "express designation" that his parole eligibility depended on section 16-93-609. In a recent note in the Yale Law Journal, the author wrote, "the term 'absurdity' impliedly contains its own high, though ill-defined, threshold; something must be so unreasonable, unjust, or outrageous to qualify as absurd." Jim Huang, *Rationalizing "Absurdity,"* 133 Yale L.J. 2380 (2024). It is unreasonable, if not outrageous and unjust, to the people of Arkansas

13

to ask a sentencing court to *anticipate* that the General Assembly would, several years later, insert a nebulous requirement into our parole eligibility statutes that could somehow be interpreted as a mandate to give heinous career criminals eligibility for parole after they had agreed to serve without the expectation of parole in a drastically reduced sentence The majority, if nothing else, should have considered the absurdity canon.

I dissent.

Special Justice MARY CAROLE YOUNG joins.

*Tim Griffin*, Att'y Gen., by: *Christian Harris*, Sr. Ass't Att'y Gen., for appellant.

*Lassiter & Cassinelli*, by: *Michael Kiel Kaiser*, for appellee.